IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MR. EISSA LUTF ABDO SAEED ABULGHAITH,

Petitioner,

vs.

KOLBY FOOTE, in his official capacity as Chief Executive Officer and Warden of the McCook Detention Center; DAVID EASTERWOOD, in his official capacity as Acting Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, St. Paul Field Office; DAVID VENTURELLA, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; and TODD BLANCHE, in his official capacity as Acting Attorney General of the United States;

Respondents.

**7:26CV5015**

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS UNDER U.S.C. § 2241**

Petitioner Eissa Lutf Abdo Saeed Abulghaith, a citizen of Yemen, filed his Petition for Writ of Habeas Corpus Under U.S. Code Section 2241 on August 5, 2026. Filing 1. Abulghaith alleges that his detention without bond while he appeals an immigration judge's order for his removal violates due process. Filing 1 at 1–2 (¶¶ 1–3). For the reasons stated below, Abulghaith's Petition is denied.

## I. INTRODUCTION

### A. Factual Background

Immigration and Customs Enforcement (ICE) detained Abulghaith on February 17, 2022, after he entered the United States without being admitted or paroled by an immigration officer.

Filing 1 at 7 (¶ 22); Filing 8 at 3–4 (¶ 12);[1] *but see* Filing 1 at 7 (¶ 28) (alleging that Abulghaith entered and was arrested on August 25 or 26, 2022). On March 14, 2022, the United States Citizenship and Immigration Service (USCIS) found that Abulghaith had a credible fear of persecution in Yemen, and he was released on bond on April 8, 2022. Filing 8 at 3–4 (¶¶ 13–14). On June 1, 2022, Abulghaith filed an asylum claim. Filing 8 at 4 (¶ 15).

Abulghaith's claims for habeas corpus relief arise from his redetention by ICE on August 25 or 26, 2025. Filing 1 at 1 (¶ 1), 2 (¶ 4). Abulghaith states that his detention by ICE apparently "had something to do with his 'relationship' to the Houthis in Yemen," based on allegedly false allegations by his ex-wife with the help of his ex-brother-in-law in the Netherlands. Filing 1 at 2 (¶ 2), 3 (¶ 6). At the time of Abulghaith's arrest, ICE cancelled his bond and moved his case from "non-detained" to "detained" proceedings. Filing 8 at 4 (¶ 21). On December 4, 2025, an immigration judge (IJ) denied Abulghaith's request for asylum, denied withholding of removal, denied relief under the Convention Against Torture, and ordered Abulghaith removed to Yemen. Filing 1 at 2 (¶ 2), 7 (¶ 31). Abulghaith filed his appeal of the IJ's decision to the Board of Immigration Appeals (BIA) on January 4, 2026. Filing 1 at 7 (¶ 32).

### B. Procedural Background

In his Petition for Writ of Habeas Corpus Under U.S. Code Section 2241, filed August 5, 2026, Abulghaith contends that his continued detention without bond while he appeals the IJ's order of removal violates due process. Filing 1 at 1–2 (¶¶ 1, 3), 3 (¶ 7). He sets out three claims ostensibly seeking habeas relief based on the alleged violations of due process. Filing 1 at 23–25. Abulghaith prays for extensive relief, including "ordering Respondents to release him immediately

---

[1] Filing 8 is the Declaration of Deportation Officer Dan Newby submitted in support of Federal Respondents' Return.

or in the alternative schedule a bond hearing before a neutral immigration judge. . . .” Filing 1 at 27 (Prayer, ¶ e).

On August 11, 2026, the Court entered an Order to Show Cause on Abulghaith’s Petition in which the Court *inter alia* set deadlines for briefing based on the date Respondents received the Petition and Order to Show Cause. Filing 3 at 5–6 (¶¶ 1–3). The Court also stated, “Upon the filing of Respondents’ return(s) and Abulghaith’s reply, the Court will determine whether or not to set a hearing on this matter prior to disposition.” Filing 3 at 6 (¶ 4). Abulghaith filed a certificate of service on all Respondents on August 14, 2026. Filing 5. On August 18, 2026, Federal Respondents[2] filed a Return accompanied by an index of supporting evidence and the Declaration of Deportation Officer (DO) Newby. Filing 6; Filing 7; Filing 8. Abulghaith then filed a Reply to Federal Respondents’ Return on August 21, 2026. Filing 9.

Although the State Respondent has filed no Return, the Court presumes that he was also served with and received the Petition and Order to Show Cause that Abulghaith represents was served by certified mail with return receipt requested. Filing 5 at 2; *see Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (stating that there is a presumption that mail is delivered and received but that presumption can be rebutted by evidence of non-receipt). Thus, the Court concludes that it may proceed with this case because Abulghaith’s physical custodian has been served with his Petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442, 450 n.18 (2004) (explaining that the physical custodian is the appropriate respondent on a § 2241 petition, absent special circumstances).

Abulghaith requested oral argument in his Petition. Filing 1 at 1. After reviewing the parties’ written submissions, the Court concludes that neither an evidentiary hearing nor oral

[2] Federal Respondents are all but Kolby Foote, the Warden of the McCook Detention Center, who will be identified, where necessary, as the State Respondent.

argument is required because a conclusion can be reached on the legal issues presented and because even taken as true Abulghaith's allegations of fact fail to state a claim for habeas relief. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court will consider Abulghaith's Petition on the parties' written submissions without an evidentiary hearing or oral argument.

## II. LEGAL ANALYSIS

### A. Standards for § 2241 Habeas Relief

The habeas statute at issue here, 28 U.S.C. § 2241, provides in pertinent part as follows:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
>> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>>
>> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>>
>> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>>
>> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>>
>> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(a), (c). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

"In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (quoting 62 Stat 869, 964–65). "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The core concern of habeas as a means to challenge detention is apparent from the language of § 2241. Under the statute, the writ does not extend to a prisoner unless he or she falls into one of the categories listed in § 2241(c). *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories). One such category—and the only one at issue here—is that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were

brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

District Courts in this Circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

### B. The Nature of Abulghaith's Claims

The Court begins with consideration of the nature of Abulghaith's claims and whether they are cognizable under 28 U.S.C. § 2241. This course was prompted in part by Abulghaith's argument in his reply that Federal Respondents "mischaracterize" his habeas claim in their Return. Filing 9 at 4.

According to Abulghaith, the alleged "mischaracterization" is Federal Respondents' description of his claim "as a request to reclassify his detention under 8 U.S.C. § 1226(a) or to impose a categorical time limit on immigration detention," but Abulghaith asserts that "[i]t is neither." Filing 9 at 4. Abulghaith explains,

> Petitioner accepts for purposes of this reply that his initial detention is authorized under 8 U.S.C. § 1225(b)(2)(A). The question this habeas petition raises is narrower and constitutional: whether the government may continue to confine Petitioner for the duration of his removal proceedings without producing any individualized evidence that he poses a current danger or flight risk, while his administrative appeal remains pending and removal is not administratively final.

Filing 9 at 4. He explains further,

> The requested relief is a constitutionally required custody hearing at which the government must justify continued detention with individualized proof—not a statutory bond redetermination under 8 U.S.C. § 1226(a).

Filing 9 at 4–5.

*1. Abulghaith Has Abandoned Any Claim of Violation of § 1226(a)*

Abulghaith's explanation of his claim and the relief he seeks is not entirely consistent with his claims or prayer for relief in his Petition. For example, he expressly prayed that the Court would "[d]eclare that Petitioner's continued detention violates section 1226(a) of the Immigration and Nationality Act." Filing 1 at 27 (prayer, ¶ d.).[3] In contrast, he expressly eschews a statutory bond redetermination under § 1226(a) in his Reply. Filing 9 at 4–5. Thus, the Court concludes that Abulghaith has expressly abandoned a claim of a violation of § 1226(a) or a request for relief in the form of a hearing pursuant to § 1226(a).

*2. Abulghaith's Due Process Claim in Count One Is Cognizable Under § 2241*

Abulghaith's Reply focuses on relief in the form of "a constitutionally required custody hearing at which the government must justify continued detention with individualized proof." This is the only claim for relief in his Petition that is cognizable under § 2241. In Count One of his

[3] In its entirety, Abulghaith's prayer is for the Court to do the following:

a. Assume jurisdiction over this matter.

b. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

c. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

d. Declare that Petitioner's continued detention violates section 1226(a) of the Immigration and Nationality Act.

e. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately or in the alternative schedule a bond hearing before a neutral immigration judge and, at such hearing, afford Petitioner release on a reasonable bond consistent with the decision of this Court.

f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

g. Grant any further relief this Court deems just and proper.

Filing 1 at 27 (Prayer for Relief). The prayers for the relief are moot, where the Court has assumed jurisdiction and issued a Show Cause Order, and the Court ultimately determines that Abulghaith is not entitled to any relief.

Petition, Abulghaith asserts "Violation of Fifth Amendment Right to Due Process." Filing 1 at 25. This claim alleges,

> 92. Continued detention of Petitioner without the individualized initial assessment after nearly four years of incident free behavior is in violation of the Fifth Amendment right to due process as set forth in *Mathews v. Eldridge*.
>
> 93. The Petitioner is entitled to due process, meaning he should have a chance to see and challenge the evidence against him. When this right is ignored and lengthy and unfair detentions result, this is a violation of his Fifth Amendment right to due process.

Filing 1 at 25 (¶¶ 92–93).

The claim in Count One thus challenges Abulghaith's continued custody as allegedly "in violation of the Constitution or laws or treaties of the United States" within the meaning of § 2241(c)(3). 28 U.S.C. § 2241(c)(3); *see also Rasul*, 542 U.S. at 483–84 ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas*, 533 U.S. at 687 ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). Abulghaith also requests relief consistent with the core remedy that habeas provides, that is, ordering his immediate release—although he then adds "or in the alternative schedule a bond hearing before a neutral immigration judge." Filing 1 at 27 (prayer, ¶ e.); *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." (emphasis in the original)); *Munaf*, 553 U.S. at 693 ("Habeas is at its core a remedy for unlawful executive detention."). Thus, the Court will consider the merits of Count One below.

*3. Abulghaith's Claims in Counts Two and Three Are Not Cognizable Under § 2241*

Abulghaith's two additional claims do not seek relief within the scope of § 2241. In Count Two, Abulghaith asserts "The Government Bears the Burden of Proof of Establishing Danger to the Community or National Security." Filing 1 at 26. This claim alleges,

> 95. Caselaw establishes that when the government detains an alien beyond a specific period without a valid reason it bears the burden of showing it continues to do so.
>
> 96. Valid reasons can be included when an alien has demonstrated dangerous behavior or the propensity to do so.
>
> 97. The Petitioner resided in the United States without incident until his arrest by ICE in August of 2025.

Filing 1 at 26 (¶¶ 95–97). This claim is a statement of law, not a claim for any relief at all. It is at most a statement about what Federal Respondents allegedly would have to show at a detention hearing that was otherwise required by due process. It neither alleges a violation of federal law, *see* 28 U.S.C. § 2241(c)(3); *Rasul*, 542 U.S. at 483–84; *Zadvydas*, 533 U.S. at 687, nor requests the core habeas remedy of release, *Thuraissigiam*, 591 U.S. at 107; *Munaf*, 553 U.S. at 693. Thus, the claim in Count Two is denied as outside the scope of § 2241, if it states any claim at all.

In Count Three, Abulghaith asserts "The Petitioner is Entitled to Procedural Safeguards in Bond Proceedings." Filing 1 at 26. This claim alleges,

> 100. The Petitioner is entitled to right to counsel, the ability to present evidence on his behalf and an administrative appeal should it be necessary. In this case, the Petitioner remains detained notwithstanding the fact that no evidence exists that he is a danger to the community or national security other than unsubstantiated allegations in a letter from HIS at Hague in the Netherlands.
>
> 101. The Petitioner argues that these allegations are the work of his ex-wife and brother-in-law as a means of vengeance against the Petitioner.

Filing 1 at 26–27 (¶¶ 100–101). This claim is also a statement about what a detention hearing would require, if one were granted, and it is perhaps an improper collateral challenge to the IJ's

order for Abulghaith's removal. Indeed, as Federal Respondents contend, Abulghaith "appears to spend most of his Petition detailing and perhaps even challenging the immigration judge's decision to order him removed and deny his asylum claim." Filing 6 at 1 (citing Filing 1 at 6–24). What the claim is not is a claim of a violation of federal law, *see* 28 U.S.C. § 2241(c)(3); *Rasul*, 542 U.S. at 483–84; *Zadvydas*, 533 U.S. at 687, or a request for the core habeas remedy of release, *Thuraissigiam*, 591 U.S. at 107; *Munaf*, 553 U.S. at 693. Thus, the claim in Count Three is denied as outside the scope of § 2241, if it states any claim at all.

### C. Abulghaith's Due Process Claim

#### *1. Abulghaith's Detention Does Not Violate Due Process*

Contrary to Abulghaith's assertions, both the statutory basis for his current detention and the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), are relevant here. This is true even accepting that his claim asserts a constitutional due process violation rather than a violation of the statute governing his detention, which was the matter addressed in *Avila*, because the statute governing his detention is what authorizes detention in the first place.

In *Avila*, the Eighth Circuit explained,

> In defining [applicant for admission], § 1225(a)(1) reads as follows:
>
> > An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Abulghaith arrived in the United States at a port of entry and was not admitted, so he plainly fell within the definition of an "applicant for admission" as interpreted by the Eighth Circuit. His release on bond in 2022 did not change his "applicant for admission" status, because parole under 8 U.S.C. § 1182(d)(5)(A), is not an "admission," and Abulghaith offers no argument why his release on bond should be any different. "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for

admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). No DHS or ICE official ever made any such determination in Abulghaith's case.

Abulghaith does not dispute that at the time of his redetention in August 2025, ICE cancelled his bond and moved his case from "non-detained" to "detained" proceedings. Filing 8 at 4 (¶ 21). Subsequently, on December 4, 2025, an IJ denied Abulghaith's request for asylum, denied withholding of removal, denied relief under the Convention Against Torture, and ordered Abulghaith removed to Yemen. Filing 1 at 2 (¶ 2), 7 (¶ 31). Thus, Abulghaith's redetention is for the purpose of removal. He falls squarely within the meaning of an "applicant for admission"—albeit one with a non-final order for removal—and is properly detained under § 1225(b). Indeed, Abulghaith expressly "accepts for purposes of [his] reply that his initial detention is authorized under 8 U.S.C. § 1225(b)(2)(A)." Filing 9 at 4. Because Abulghaith's detention is pursuant to § 1225(b), there is no statutory authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

2. *The Due Process Clause Does Not Provide Abulghaith with Relief*

Abulghaith acknowledges that *Avila* settled the questions of whether an unadmitted alien present in the United States is subject to mandatory detention under § 1225(b)(2)(A) and whether the alien is entitled to a statutory bond hearing under § 1226(a) by answering yes to the first question and no to the second. Filing 9 at 7. Nevertheless, he argues that *Avila* did not hold that the Constitution permits prolonged detention without any individualized process, and he argues that distinction is dispositive here because *Avila* does not help to prove that detention is appropriate when he presents no current danger or risk of absconding. Filing 9 at 7. The Court agrees that *Avila*

did not decide the constitutional claim that Abulghaith states, but nevertheless the Court concludes that the disposition of such a claim is settled by other decisions.

The Court does not find it necessary or appropriate to consider Abulghaith's due process claim by applying the *Mathews* three-factor test on which he relies. *See* Filing 1 at 20– 25 (¶¶ 76–89), 25 (Count I). For the reasons set out in the Court's decisions in *Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *15–17 (D. Neb. Dec. 29, 2025), the Court denies Abulghaith's claim of violation of his Fifth Amendment due process rights.

Central to the analysis in *Alberto Rodriguez* is the fact that in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). In both *Banyee* and *Demore*, the statute at issue was 8 U.S.C. § 1226(c), which—like § 1225(b) at issue in Abulghaith's case—requires mandatory detention. *Id.* (citing *Demore*, 538 U.S. at 514). The Eighth Circuit explained,

> [In Demore, the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522, 123 S.Ct. 1708; *accord Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g.*, *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

Banyee, 115 F.4th at 931.

The Eighth Circuit explained further,

> It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[ ]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531, 123 S.Ct. 1708. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id*. at 528–29, 123 S.Ct. 1708 (citation omitted); *see Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (drawing the same definite-versus-indefinite distinction); *cf. Borrero v. Aljets*, 325 F.3d 1003, 1008 (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*. *See Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

Banyee, 115 F.4th at 932 (emphasis in the original).

The Eighth Circuit then stated,

> These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead dissent in *Demore* advocated for the type of "individual determination" Banyee now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "pending." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933 (emphasis in the original).

For Abulghaith, like the petitioner in *Banyee*, the deportation proceedings are still pending. *Id.* Because Abulghaith's detention is pursuant to § 1225(b), there is no authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither

§ 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings”). Abulghaith contends only that he is being held without an individualized detention hearing, but § 1225(b) requires his detention. “Congress may make rules as to aliens that would be unacceptable if applied to citizens,” and “the government has more flexibility when dealing with immigration.” *Banyee*, 115 F.4th at 931 (internal quotation marks and citations omitted).

Abulghaith’s attempts to distinguish *Banyee* are unavailing. He contends that Federal Respondents misread *Banyee* as stating a categorical rule that duration never matters, but he asserts that reading that does not address his argument. Filing 9 at 7. He argues that Federal Respondents’ reading would convert mandatory initial detention into detention immune from factual testing even where removal is not administratively final and ICE has cited only speculative evidence of danger. The flaw with Abulghaith’s attempt to distinguish *Banyee* arises from his similar reliance on due process protection from “indefinite” detention and his further assertion that under *Zadvydas v. Davis*, 533 U.S. at 678 (2001), the Fifth Amendment prohibits “prolonged” detention absent individualized proof of danger or flight risk and adequate procedural safeguards. Filing 9 at 8.

First, *Banyee* clarified that the issue is not duration of detention but the “why” of detention and the further distinction between indefinite and definite detention. *See Banyee*, 115 F.4th at 932. In *Banyee*, the Eighth Circuit observed that “what matters is that detention pending deportation ‘ha[s] a definite termination point’—deporting or releasing the alien—making it ‘materially different’ from the ‘potentially permanent’ confinement authorized by other statutes.” *Id.* (quoting *Demore*, 538 U.S. at 528-29). In Abulghaith’s status and circumstance, where he is subject to detention pending a final determination of removal, his detention will definitely end, either with a deportation or release. *Id.* His invocation of constitutional concerns with “indefinite” detention in his case are misplaced.

Moreover, *Zadvydas* did not hold that the Fifth Amendment prohibits "prolonged" detention. It held that for aliens ordered removed, where detention threatens to be "indefinite," to avoid "serious constitutional concerns," the Supreme Court construed the statute permitting detention, that is, 8 U.S.C. § 1231(a)(6), "to contain an implicit a 'reasonable time' limitation [of six months], the application of which is subject to federal-court review." *Zadydas*, 533 U.S. at 682. After that period of presumptively constitutional detention, an alien had to provide good reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future to obtain release, and the Government had to be given the opportunity to rebut that showing. *Id.* at 701. Abulghaith is in a quite different situation. First, he is not an alien ordered removed but one whose appeal of a removal order is pending. *See id.* 682. Second, as *Banyee* explains, he is not facing "indefinite" detention because his detention pending appeal of his removal will definitely end, either with removal or release. *See Banyee*, 115 F.4th at 932. Third, there is no reason to believe at this time that Abulghaith's removal—if ordered—will not be accomplished within the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

Furthermore, Abulghaith's invocation of the *Mathews* three-factor balancing test to determine whether his detention comports with due process is also unavailing. The Supreme Court has already performed the due process balancing test for immigration cases and found that detention is reasonable in the context of determination of whether an alien should be removed. *Banyee*, 115 F.4th at 933 ("These cases leave no room for a multi-factor 'reasonableness' test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. But *Zadvydas* and *Demore* have already done whatever balancing is necessary." (internal quotation marks and citations omitted)). Thus, Abulghaith's due process rights have not been violated because there is "a bright-line rule" applicable in his circumstances: "the government

can detain an alien for as long as deportation proceedings are still '*pending*.'" *Id.* (quoting *Demore*, 538 U.S. at 527 (majority opinion), with emphasis in the original).

Abulghaith asserts that he does not present—and Federal Respondents have not been required to show—that his poses a danger or flight risk warranting detention. *See* Filing 1 at 3 (¶ 6), 23 (¶ 85). Even if such a showing might be required in other circumstances to satisfy due process, such a showing is not required at this point where Abulghaith's removal action is still pending, his detention is not "indefinite," and there is no reason to believe that if he is ordered removed, that removal will not be accomplished within the reasonably foreseeable future.

Thus, Abulghaith has failed to carry his burden to show that he is entitled to any relief on his due process claim in his Petition. *See Maldonado*, 2025 WL 2374411, at *4 (concluding that a petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)).

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Eissa Lutf Abdo Saeed Abulghaith's Petition for Writ of Habeas Corpus Under U.S. Code Section 2241, Filing 1, is denied.

Dated this 26th day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge